(58 App. Div. 550.)

### COLLIER v. COLLINS.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

LANDLORD AND TENANT—DANGEROUS PREMISES—INJURIES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

At the back of a flat there was a window, the sill of which was about 2 feet above the ground; and beneath the window, on the outside, was an area about 5 feet deep, covered by a slat grating 32 by 24 inches. Defendant's agent, when showing the premises to plaintiff, informed her that the window was used by tenants as an access to the back yard, and that it was intended for that purpose. Plaintiff rented the flat, and subsequently, on notice to the agent that the grating was dangerous, he came and fixed it, and informed plaintiff that it was all right; and in about two months thereafter plaintiff, while going to the back yard through the window, fell through the grating and was injured. Held, that plaintiff was not guilty of contributory negligence, as matter of law, and hence it was error to dismiss her complaint at the close of plaintiff's case.

Hirschberg and Jenks, JJ., dissenting.

Appeal from trial term, Kings county.

Action by Gudron S. Collier against Henry S. Collins. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Charles L. Woody, for appellant.
J. Stewart Ross, for respondent.

GOODRICH, P. J. At the time of the accident hereinafter referred to, the plaintiff, with her husband, occupied the ground floor of a tenement house on President street, in the borough of Brooklyn. Two other families lived in the house. There was an entrance for all the tenants, to the rear yard, through the cellar and up into the yard, which could have been used by the plaintiff, inasmuch as it was used by the other tenants. At the rear of the plaintiff's flat was a window opening into the yard, the sill being about 2 feet above the surface of the yard. There was also at this window, and opening into the yard, an iron gate, which swung on hinges, and was fastened with an iron screw and bolt. Under the window, and 2 feet lower than the window sill, was an area opening into the cellar, and about 5 feet deep; its mouth being 32x22 inches in size, and covered with a wooden slat grating, 32x24 inches in size. This cover rested on the sides and rear of the area, but had no support next the house. It had no cleats or other appliances to hold it in place, or to prevent its slipping off the edges and into the area. That such a construction was very dangerous to persons passing over it is ap-

parent. The plaintiff in May, 1898, hired the flat from the janitor,—the owner being a nonresident,—and was accustomed to pay him the rent. She testified that at the time of the hiring she asked the janitor "whether that gate was for persons to use when they hung out clothes. He said: 'Yes;' every one had always used it since he had been there." She also testified that he showed her out into the kitchen, and told her:

"This is the way to go out in the yard, to use it for your washing and having your children in. * * * This is the place to go out to hang your clothes up. This gate as well as your door. It is intended for the tenants who live on the first floor to go out in the yard."

This evidence was abundantly sufficient to show that the defendant, through the janitor, his agent for the hiring of the premises, authorized the plaintiff's use of the window as a means of access to the yard.

In September the plaintiff asked the janitor to "fix the grating, because I did not think it was secure to go through the window, and he said he would do so, and he fixed it; jumped on it; said it was all right,—that there was no danger whatever. That was two months before the accident. After that we used it always" to go into the yard. About 10 o'clock on the night of the accident in question, the plaintiff had gone through the window to hang out clothes in the yard. Upon her return, and while stepping upon the grating, it gave way, or tilted into the hole or area; and she was thrown through the window, breaking the glass and receiving injuries. At the close of the plaintiff's evidence the court dismissed the complaint, and this appeal results.

It does not appear from the evidence that the plaintiff was guilty of contributory negligence as matter of law. In Palmer v. Dearing, 93 N. Y. 7, 10, 11, the court (Ruger, C. J., writing) said:

"While previous knowledge by a party injured of a dangerous situation or impending danger, from which a person of ordinary intelligence and prudence might reasonably apprehend injury, generally imposes upon him the duty of exercising greater care and caution in approaching it; yet the degree of care which should be required of such a person has uniformly been held, in this state, to be a question of fact, to be determined by the jury. Bassett v. Fish, 75 N. Y. 304; Weed v. Village of Ballston Spa, 76 N. Y. 329; Niven v. City of Rochester, Id. 619; Lanigan v. Gaslight Co., 71 N. Y. 29. * * * It would be an extremely harsh rule which should require the plaintiff, who was called so often to pass this place, to have kept her mind invariably fixed upon its character, and to make her responsible for an omission to exercise incessant vigilance in passing over it. At all events, she could hardly, as a matter of law, be chargeable with negligence in descending this stairway at a time when she had some reason to suppose, from the assurances of the defendant, that the defect had been repaired and the danger removed."

So, also, there was evidence to raise a question of fact as to the negligence of the defendant. In Dollard v. Roberts, 130 N. Y. 269, 29 N. E. 104, 14 L. R. A. 238, where the plaintiff received an injury by reason of the unsatisfactory condition of the hallway, the court said (page 273, 130 N. Y., and page 104, 29 N. E., and page 242, 14 L. R. A.):

"Their right of passage through it was necessary to the availability for occupancy of the apartments rented by them. It was provided for their use

in passing to and from the apartments demised to them, of which it constituted no part. It was, therefore, subject to their right of passage in it, under the control of the defendant, who was the owner and their landlord. And upon him was the duty of exercising reasonable care in keeping the hallway in suitable repair and condition for the use in safety by his tenants of apartments on the floors above it. Donohue v. Kendall, 50 N. Y. Super. Ct. 386; Id., 98 N. Y. 635; Palmer v. Dearing, 93 N. Y. 7; Looney v. McLean, 129 Mass. 33; Lindsey v. Leighton, 150 Mass. 285, 22 N. E. 901; Peil v. Reinhart, 127 N. Y. 381, 27 N. E. 1077, 12 L. R. A. 843."

In Rouillon v. Wilson, 29 App. Div. 307, 51 N. Y. Supp. 430, it is stated that when the attention of the landlord has been called to the rotten and insecure condition of a portion of a platform on the roof of his building, used by the tenants with his permission, he is bound to ascertain the condition of the entire platform. In the present litigation the attention of the landlord was called to the unsafe and insecure condition of the grating, and he was bound to put it into a reasonably safe condition. Whether or not he did so was, upon the evidence, a question for the jury. On both questions, therefore, it was not proper for the court to find, as matter of law, that the plaintiff was guilty of contributory negligence, or that the defendant was not negligent; and it follows that the judgment should be reversed, and new trial granted; costs to abide the event. All concur, except HIRSCHBERG and JENKS, JJ., dissenting.

